ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| MARÍA LUISA MARRERO CRUZ<br><br>Apelante<br><br>V.<br><br>HERMINIO IRIZARRY MALDONADO<br><br>Apelado | TA2026AP00452 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Utuado<br><br>Caso Núm.: LR2024CV00131<br><br>Sobre: Cobro de dinero ordinario |
| --- | --- | --- |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Rivera Torres y el Juez Marrero Guerrero.

Marrero Guerrero, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de mayo de 2026.

Comparece la señora María Luisa Marrero Cruz (apelante), quien solicita la revisión de una *Sentencia* emitida y notificada el 11 de marzo de 2026 por el Tribunal de Primera Instancia, Sala Superior de Lares (TPI).[1] En el referido dictamen, el foro primario desestimó sumariamente la causa de acción instada por la apelante contra el señor Herminio Irizarry Maldonado (apelado) y le impuso el pago de $3,000.00 en concepto de honorarios de abogado por temeridad.

Por los fundamentos que se exponen a continuación, se modifica el dictamen apelado únicamente a los fines de dejar sin efecto la imposición de los honorarios de abogado por temeridad.

**I.**

Este caso se originó el 21 de mayo de 2024, cuando la señora Marrero Cruz presentó una *Demanda* en cobro de dinero por la vía ordinaria en contra del señor Irizarry Maldonado.[2] En esta, alegó que el 31 de mayo de 2023, el apelado contrató sus servicios para gestionar ayudas federales agrícolas bajo el *Emergency Relief Program*

---

[1] Entrada Núm. 100 del expediente del caso LR2024CV00131 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[2] *Íd.*, Entrada Núm. 1.

(ERP) *Phase 2* y el *Pandemic Assistance Revenue Program* (PARP), así como la hoja suplementaria de ingresos ajustados de PARP.

La apelante sostuvo que el apelado suscribió una carta de compromiso mediante la cual aceptó pagar $800.00 como depósito —suma que entregó— y el siete por ciento (7%) del monto recibido por sus gestiones relativas a ambos programas. Adujo que, pese a recibir las ayudas, el apelado incumplió con el pago convenido, estimado en $17,500.00. Por ello, solicitó evidencia de los montos desembolsados y el pago del 7% pactado.

El 12 de agosto de 2024, el señor Irizarry Maldonado contestó la *Demanda*.[3] En esencia, negó haber contratado a la apelante y alegó que acudió ante ella para formalizar las solicitudes de los programas federales, gestión por la cual pagó $800.00. Además, sostuvo que la señora Marrero Cruz suscribió documentos en su nombre, infló las facturas por la compra de bombas para asperjar herbicidas y le cobró $2,000.00 adicionales en efectivo, sin emitir recibo. Adujo que no sabía leer ni escribir, salvo firmar, y que no habría aceptado los servicios de la apelante de haber conocido el porcentaje reclamado. Planteó que dicho cobro era ilegal, ya que requería desviar fondos federales de alivio agrícola, auditados por el *United States Department of Agriculture* (USDA), a un fin ajeno al resarcimiento de las pérdidas causadas por los desastres naturales y la pandemia.

Tras varios trámites procesales, el 3 de diciembre de 2025, el señor Irizarry Maldonado solicitó que se dictara sentencia sumaria a su favor y se desestimara la *Demanda*.[4] Precisó que no existía una obligación válida de pagar el 7% de los beneficios recibidos, ya que la apelante ya había recibido su compensación. Añadió que no prestó un consentimiento válido para el acuerdo, dado que la apelante conocía que él no podía leer ni escribir, no le leyó el documento, ni

---

[3] *Íd.*, Entrada Núm. 12.
[4] *Íd.*, Entrada Núm. 82.

procuró que interviniera un testigo instrumental. Además, planteó que el pago reclamado era contrario al propósito de las ayudas y constituiría enriquecimiento injusto por servicios no prestados.

Por su parte, el 23 de diciembre de 2025, la señora Marrero Cruz se opuso a la solicitud de sentencia sumaria.[5] Articuló que el apelado no sustentó adecuadamente los hechos propuestos con prueba admisible. Adujo que existía un contrato de servicios válido, por el cual el señor Irizarry Maldonado convino pagar $800.00 como depósito y el 7% de las ayudas aprobadas, contraprestación que consideró justa por su conocimiento técnico y el beneficio obtenido por el apelado. Señaló que estudió los programas, orientó al apelado y completó los formularios, servicios por los cuales otros gestores cobraban honorarios contingentes mayores.

Según alegó, el apelado leyó y suscribió el contrato, su esposa lo acompañó en dos (2) ocasiones y recibió explicación de los términos al menos tres (3) veces. Sostuvo que las disposiciones del ERP *Phase 2* y del PARP no prohibían expresamente el acuerdo ni restringían el uso de la ayuda, salvo el requisito de seguro de cultivo, por lo que debía prevalecer el principio de *pacta sunt servanda*.

El 30 de diciembre de 2025, el señor Irizarry Maldonado replicó que su solicitud de sentencia sumaria cumplía con los requisitos de forma y que la prueba demostraba la inexistencia de un contrato válido de servicios profesionales. Reiteró que la señora Marrero Cruz recibió $800.00 por completar las solicitudes y que la carta de compromiso era nula al carecer de causa y de una descripción de las gestiones que justificaran los honorarios contingentes. Añadió que el USDA *Contracting Desk Book* prohibía honorarios contingentes relacionados con fondos federales de alivio agrícola. Por último,

---

[5] *Íd.*, Entrada Núm. 92.

invocó un caso similar resuelto contra la apelante y solicitó $5,000.00 en costas y honorarios de abogado por temeridad.

Evaluado el asunto, el 11 de marzo de 2026, el TPI emitió la *Sentencia* apelada, en la que formuló las determinaciones de hechos que siguen:[6]

1. La Parte Demandante, María Luisa Marrero Cruz, es mayor de edad, soltera, agricultora/comerciante y vecina de Lares, Puerto Rico.
2. La Parte Demandada, Herminio Irizarry Maldonado, es mayor de edad, agricultor y vecino de Adjuntas, Puerto Rico.
3. La Parte Demandada es titular de varias fincas que en conjunto ascienden a una cabida total de más de ciento ochenta (180) cuerdas de terreno, con siembras de plátano y café.
4. La Parte Demandada recibió una orientación inicial vía telefónica con la Parte Demandante. Luego la Parte Demandada le entregó varios documentos a la Parte Demandante para la evaluación de su caso y contrató sus servicios para que esta le asistiera con los trámites relacionados con las solicitudes de las ayudas económicas de los programas federales conocidos como ERP y PARP.
5. Dichas solicitudes fueron las siguientes: a). FSA-1122 (01-23-23) Pandemic Assistance Revenue Program (PARP) Application y b). FSA-521 (04-28-23) Emergency Relief Program (ERP) Phase 2 Application.
6. La Parte Demandante le entregó para la firma a la Parte Demandada un documento nombrado Carta de Compromiso de los Programas de USDA Department of Agriculture Farm Service Agency.
7. El 31 de mayo de 2023, la Parte Demandada firmó un documento intitulado Carta de Compromiso de los Programas de USDA Department of Agriculture Farm Service Agency.
8. El contenido de dicha carta es el siguiente:

    POR LA PRESENTE SE [TRABAJARÁN] LOS PROGRAMAS EMERGENCY RELIEF PROGRAM (ERP) PHASE 2 [APPLICATION] PANDEMIC ASSISTANCE REVENUE PROGRAM (PARP) APPLICATION, CONTINUATION SHEET FOR PANDEMIC ASSISTANCE REVENUE PROGRAM (PARP) ADJUSTED REVENUE.

    La carta de compromiso de pago se basa en un depósito de $400 dólares por programa, el cual son dos programas, para un total de $800 dólares se pagarán al momento de la entrega de los documentos cumplimentados.

    El pago de los programas se basa en el 7% del pago total de los dos programas. Al recibir el pago de los programas PARP y ERP, emitidos por la FSA el agricultor [pasará] a pagar el restante del pago del programa. El depósito de los $400, por cada ayuda se adjudicará [al] pago recibido por la agencia. Se restará el depósito de $800 del total del 7% de la ayuda. Por la presente yo, María Luisa Marrero Cruz[,] me relevo de toda responsabilidad, con la Agencia de USDA, FSA y se [están cumplimentando] los programas solo con información provista por el agricultor.

9. El 31 de mayo de 2023, la Parte Demandada le pagó ochocientos dólares ($800.00) a la Parte Demandante por sus gestiones en el proceso de solicitar los beneficios de los programas a favor de la Parte Demandada; dicho pago consistió en cuatrocientos dólares ($400.00) por cada solicitud de cada programa.
10. La Parte Demandante le expidió a la Parte Demandada un recibo de pago por dicha suma pagada.

---

[6] *Íd.*, Entrada Núm. 100.

11. La Parte Demandante completó los dos (2) formularios de solicitud de ayuda y los envió a la agencia federal correspondiente por correo electrónico. Además, le entregó a la Parte Demandada unas copias de las solicitudes y la confirmación de recibo del correo electrónico.

12. Luego de que la Parte Demandante le prestara sus servicios a la Parte Demandada, la Farm Service Agency aprobó las ayudas federales solicitadas.

13. La Parte Demandada recibió el pago por concepto del desembolso de las ayudas económicas solicitadas que provienen de dichos programas federales, ERP y PARP.

14. Los fondos que provienen del programa ERP Phase 2 se administran bajo la Farm Service Agency con el fin de compensar las pérdidas agrícolas causadas por los desastres naturales que ocurrieron específicamente durante los años 2020 y 2021.

15. Los fondos que provienen del programa PARP se administran bajo la Farm Service Agency y se destinan a aliviar las pérdidas de ingresos de los productores agrícolas elegibles relacionadas con la pandemia del COVID-19 durante el año 2020.

16. La Parte Demandada afirmó que los fondos provenientes de ambos programas federales se le aprobaron como ayuda por las pérdidas que tuvo en su finca.

El foro primario razonó que la intención de la señora Marrero Cruz era imponer el pago, además de los $800.00, del 7% de la suma total recibida por el señor Irizarry Maldonado de los fondos ERP *Phase 2* y PARP. No obstante, concluyó que el *Code of Federal Regulations*, 7 CFR secs. 9.303-9.305 y 760.1900-760.1904, no contenía disposición alguna que autorizara reservar parte de los fondos para pagar a los gestores ni legitimaba el cobro de un porcentaje sobre las ayudas desembolsadas. A su vez, consignó que, pese a que la apelante adujo que los gestores solían cobrar honorarios contingentes por porcentajes mayores, no presentó prueba adicional que corroborara esa afirmación más allá de su declaración jurada.

Por ello, el TPI declaró la invalidez parcial de la carta de compromiso en cuanto a la obligación de pagar el 7% de los incentivos, al entender que dicha cláusula comprometía fondos federales destinados a aliviar pérdidas agrícolas ocasionadas por desastres naturales o por la pandemia. En consecuencia, resolvió que, al no existir una deuda válida, líquida y exigible, no procedía la acción de cobro de dinero.

Asimismo, el foro *a quo* consideró innecesario atender el planteamiento sobre vicio del consentimiento y descartó el enriquecimiento injusto, al concluir que el único pago efectuado fue

de $800.00 y que el apelado no estaba obligado a efectuar un pago adicional. Por ello, declaró Ha Lugar la solicitud de sentencia sumaria, desestimó la *Demanda* y le impuso a la apelante el pago de $3,000.00 en honorarios de abogado por temeridad.

En desacuerdo, el 26 de marzo de 2026, la apelante solicitó reconsideración.[7] Arguyó que no procedía declarar nula la obligación del pago del 7% de las ayudas, al no existir una prohibición legal expresa, por lo que la autonomía de la voluntad de las partes permitía pactar libremente la compensación contingente. Al respecto, el 6 de abril de 2026, el foro apelado emitió y notificó una *Resolución Interlocutoria* en la que declaró No Ha Lugar tal solicitud.[8]

Aun inconforme, el 5 de mayo de 2026, la señora Marrero Cruz presentó este recurso, en el que señaló los siguientes errores:

1. ERRÓ EL TPI AL NO HACER VALER EL CONTRATO FIRMADO ENTRE LAS PARTES EN CONTRA DEL PRINCIPIO DE *PACTA SUNT SERVANDA* Y DE LAS PROPIAS DETERMINACIONES DE HECHO DEL TPI.
2. ERRÓ EL TPI AL REALIZAR CIERTAS DETERMINACIONES DE HECHOS QUE NO ENCUENTRAN APOYO EN LA PRUEBA ADMISIBLE NI EN LAS DECLARACIONES JURADAS DE LA DEMANDADA (APELADA); Y AL LLEGAR A UNA CONCLUSIÓN QUE NO SE AJUSTA A LOS HECHOS INCONTROVERTIDOS NI AL DERECHO APLICABLE.
3. ERRÓ EL TPI AL DETERMINAR QUE EL CONTRATO OBJETO DEL CASO ES AMBIGUO Y AL INTERPRETAR SU [CONTENIDO].
4. ERRÓ EL TPI AL IMPONER EN LA DEMANDANTE (APELANTE) EL PESO DE PROBAR QUE EXISTE UNA LEY QUE EXPRESAMENTE PROVEA PARA LO ACORDADO EN EL CONTRATO CON RESPECTO AL PAGO POR LOS SERVICIOS PRESTADOS, BAJO EL FUNDAMENTO DE QUE NO EXISTE UNA LEY QUE EXPRESAMENTE LO PERMITA.
5. ERRÓ EL TPI AL DAR POR NO PUESTA UNA MOCIÓN DE SENTENCIA SUMARIA QUE NO CUMPLE CON LA REGLA 36.
6. ERRÓ EL TPI AL NO INCLUIR LAS PROPUESTAS DETERMINACIONES DE HECHOS INCLUIDAS EN LA OPOSICIÓN Y EN SOLICITUD DE SENTENCIA SUMARIA DE LA DEMANDANTE (APELANTE), SUSTENTAS CON PRUEBA ADMISIBLE Y DECLARACIONES JURADAS, Y LAS CUALES NO FUERON CONTROVERTIDAS POR EL DEMANDADO (APELADO).
7. ERRÓ EL TPI AL CONDENAR A LA APELANTE AL PAGO DE HONORARIOS DE ABOGADO POR TEMERIDAD CUANDO SUS ACTOS SE LIMITARON AL EJERCICIO LEGÍTIMO DE SUS DERECHOS A LOS FINES DE HACER VALER UN CONTRATO QUE SEGÚN LOS HECHOS INCONTROVERTIDOS DEL TPI SE FIRMÓ POR LAS PARTES DEL EPÍGRAFE.

---

[7] *Íd.*, Entrada Núm. 101.
[8] *Íd.*, Entrada Núm. 102.

En esencia, la apelante planteó que el TPI erró al no hacer valer la carta de compromiso, pese a que sus términos eran claros, las partes la suscribieron libremente y ella cumplió con las gestiones que permitieron que el señor Irizarry Maldonado recibiera las ayudas. A su juicio, el dictamen contravino el principio de *pacta sunt servanda* al invalidar parcialmente el acuerdo sin una disposición legal que prohibiera los honorarios contingentes.

También, alegó que el foro apelado le impuso indebidamente la carga de identificar una norma que autorizara expresamente el pacto, cuando correspondía al apelado demostrar que el acuerdo estaba prohibido. Sostuvo que las disposiciones relativas al ERP *Phase 2*, al PARP y al delito de *theft or bribery concerning programs receiving Federal funds*, 18 USC sec. 666, el USDA *Contracting Desk Book* y el *Treasury Department Circular 230*, 31 C.F.R. sec. 10.0(a) *et seq.* no prohibían lo pactado ni invalidaban la carta de compromiso.

La apelante señaló que el TPI resolvió el caso sumariamente, pese a que la moción de sentencia sumaria del apelado incumplía con los requisitos de forma, y que dicho foro omitió considerar los hechos propuestos por ella. Por último, impugnó la partida de honorarios de abogado por temeridad, al sostener que se limitó al ejercicio legítimo de una reclamación contractual.

Por su parte, el 12 de mayo de 2026, el señor Irizarry Maldonado presentó su alegato, en el que negó la existencia de un contrato bilateral válido. Adujo que la apelante redactó la carta de compromiso de pago sin detallar sus funciones ni explicarle adecuadamente su contenido, pese a su escolaridad limitada. El apelado sostuvo que los honorarios contingentes solicitados eran improcedentes por carecer de base legal y contravenir el orden público. Expuso que las ayudas federales estaban destinadas a brindar alivio económico directo a los agricultores afectados por

desastres naturales o por la pandemia, por lo que no podían destinarse al pago de los servicios de la apelante.

Asimismo, arguyó que su consentimiento estuvo viciado, ya que entendió que el pago de $800.00 satisfacía la totalidad de sus obligaciones. Indicó que no habría permitido que la apelante tramitara las solicitudes de haber sabido que reclamaría el 7% de los beneficios.

En torno a la sentencia sumaria, puntualizó que su moción satisfacía las exigencias de forma y que la controversia era estrictamente de Derecho respecto a la validez de la carta, la existencia de consentimiento y si el cobro reclamado era compatible con el orden público. Finalmente, justificó la imposición de honorarios por temeridad al atribuir a la apelante una conducta procesal irrazonable y contumaz, incluyendo su negativa a contestar un interrogatorio, el incumplimiento de órdenes del TPI, una sanción económica previa y la presentación de un recurso ante este Tribunal relacionado con una orden de descubrimiento de prueba.

## II.

### A. Sentencia sumaria

La sentencia sumaria permite disponer de un caso sin la celebración de un juicio cuando las alegaciones y la prueba demuestran que no existe una controversia genuina sobre hechos materiales. *Coop. Seguros Múltiples de PR v. ELA,* 2025 TSPR 78, 216 DPR ___ (2025); *Birriel Colón v. Econo y otro*, 213 DPR 80 (2023); *SLG Fernández-Bernal v. RAD-MAN et al.,* 208 DPR 310 (2021); *Meléndez González et al. v. M. Cuebas,* 193 DPR 100 (2015); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414 (2013).

La parte opositora debe controvertir los hechos materiales mediante evidencia sustancial, aunque la falta de prueba no conlleva la concesión automática del dictamen sumario. *Birriel Colón v. Supermercado Los Colobos, supra; SLG Fernández-Bernal v. RAD-MAN*

*et al., supra.* Además, no puede descansar en meras alegaciones cuando la solicitud de sentencia sumaria está apoyada con prueba, ya que debe responder con igual especificidad y detalle. Regla 36.3 (c) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3 (c).

Al evaluar una sentencia sumaria, este foro apelativo aplica un estándar de revisión *de novo*, se coloca en la misma posición que el TPI y limita su análisis a la prueba presentada ante dicho foro. *Meléndez González et al. v. M. Cuebas, supra.* Así, corresponde verificar el cumplimiento con los requisitos de la Regla 36 de Procedimiento Civil, *supra. Íd.* También, debe determinarse si existen hechos materiales en controversia. *Íd.* De existir, procede distinguir entre los hechos controvertidos y los incontrovertidos. *Íd.* En su ausencia, se evalúa si el TPI aplicó correctamente el derecho. *Íd.*

### B. Contratos

Un contrato es un negocio jurídico bilateral en el que dos (2) o más partes manifiestan su consentimiento para crear, modificar o extinguir obligaciones. Artículo 1230 del Código Civil, 31 LPRA sec. 9751. Una vez constituido, el contrato obliga a las partes a su cumplimiento y tiene fuerza de ley entre las partes, sus sucesores y terceros. Artículo 1233 del Código Civil, *supra,* sec. 9754; *UIA v. Santander Securities y otros,* 214 DPR 601 (2024); *Rosario Rosado v. Pagán Santiago,* 196 DPR 180 (2016); *PRFS v. Promoexport,* 187 DPR 42 (2012); *BBPR v. Sucn. Talavera,* 174 DPR 686 (2008).

La decisión de contratar o no y con quién es facultativa, siempre que no se ejerza de forma abusiva ni contra una disposición legal. Artículo 1232 del Código Civil, *supra,* sec. 9753. Asimismo, las partes pueden pactar cualquier cláusula que no contravenga la ley, la moral o el orden público. *Íd.* El negocio jurídico puede quedar privado de sus efectos por un vicio originario, esencial e intrínseco. Arts. 286, 341 y 342 del Código Civil, *supra,* secs. 6192, 6311 y 6312.

### C. Cobro de dinero

En una acción de cobro de dinero, la parte demandante tiene el peso de probar la existencia de una deuda válida, que no ha sido satisfecha, que es el acreedor y que la parte demandante es el deudor. *General Electric v. Concessionaires, Inc.*, 118 DPR 32 (1986). No obstante, solo son reclamables judicialmente las deudas vencidas, líquidas y exigibles. *RMCA v. Mayol Bianchi*, 208 DPR 100 (2021). Una deuda es líquida cuando su cuantía es cierta y determinada. *Ramos y otros v. Colón y otros*, 153 DPR 534 (2001). Es exigible cuando puede reclamarse su cumplimiento. *RMCA v. Mayol Bianchi, supra*; *Guadalupe v. Joaquín*, 70 DPR 958 (1950).

### D. Programas federales

ERP *Phase 2* y PARP fueron programas federales de asistencia agrícola administrados por la Farm Service Agency (FSA) del USDA. ERP *Phase 2* otorgó pagos a productores agrícolas con pérdidas de cultivos, calidad o producción por desastres cualificados ocurridos en los años 2020 y 2021. 7 C.F.R. secs. 760.1900(a), 760.1902(a) (2026); *Pandemic Assistance Programs and Agricultural Disaster Assistance Programs, Final Rule*, 88 Fed. Reg. 1862, 1862–63 (2023). La asistencia se calculó según la disminución del ingreso bruto permitido entre el año de referencia y el año de desastre correspondiente. 7 C.F.R. secs. 760.1903 y 760.1905. Además, los pagos estaban limitados por el porcentaje del ingreso bruto ajustado promedio derivado sus actividades agrícolas. *Íd.* sec. 760.1906. Los productores debían conservar los documentos de apoyo por tres (3) años desde la aprobación y permitir que representantes autorizados del USDA o de la *Government Accountability Office* inspeccionaran su operación, libros y registros. *Íd.* sec. 760.1907(a)–(b).

Por su parte, PARP apoyó a los productores agrícolas que sufrieron pérdidas de ingresos en el año 2020 debido a la pandemia de COVID-19. *Íd.* sec. 9.301(a). Los pagos se calcularon a nivel de la

operación agrícola en su conjunto y estuvieron sujetos a requisitos y limitaciones reglamentarias de ingreso, pago y atribución. *Íd.* secs. 9.306, 9.307 y 9.309; *Final Rule, supra,* págs. 1867–68.

A modo persuasivo, en el ámbito de contratación pública, los tribunales han rechazado la ejecución judicial de acuerdos privados de honorarios contingentes incompatibles con la normativa de adquisiciones y la política pública federal. *Quinn v. Gulf & Western Corp.,* 644 F.2d 89 (2d Cir. 1981); *véase también Weitzel v. Brown-Neil Corp.,* 251 F.2d 661 (4th Cir. 1958); *Mitchell v. Flintkote Co.,* 185 F.2d 1008 (2d Cir. 1951). Ello responde al interés de proteger a las agencias de influencias corruptoras, venta de influencia, aumento indebido de costos y adjudicación de contratos que no se habrían otorgado de otro modo. *Quinn v. Gulf & Western Corp., supra.* En ese contexto, la ausencia de una declaración expresa de invalidez de los honorarios contingentes no obliga a que se ejecute un acuerdo privado contrario a dicha normativa. *Íd.*

### E. Honorarios de abogado por temeridad

La Regla 44.1 (d) de Procedimiento Civil, *supra,* R. 44.1 (d), faculta al TPI a imponer honorarios de abogado cuando una parte actúa con temeridad. Esta consiste en una conducta obstinada, contumaz o carente de fundamento que obliga a la parte contraria a incurrir en los gastos de un litigio evitable o innecesariamente prolongado. *Marrero Rosado v. Marrero Rosado,* 178 DPR 476, 504 (2010); *SLG Flores-Jiménez v. Colberg,* 173 DPR 843, 866 (2008).

Su imposición busca desalentar litigios infundados, compensar a la parte prevaleciente por los gastos ocasionados por la conducta irrazonable de su contraparte y sancionar la actitud inflexible que obliga a litigar. *Marrero Rosado v. Marrero Rosado, supra; COPR v. SPU,* 181 DPR 299 (2011). Esta determinación descansa en la sana discreción del juzgador y solo procede revisarla por abuso de discreción. *Íd.*

**III.**

En este caso, la señora Marrero Cruz sostuvo que el TPI incidió al disponer sumariamente de su reclamación de cobro de dinero, al no reconocer eficacia a la carta de compromiso y a la cláusula mediante la cual reclamó el 7% de los fondos que la FSA le desembolsó al apelado bajo los programas ERP *Phase 2* y PARP, al imponerle la carga de demostrar que dicho pacto estaba expresamente autorizado, al omitir hechos propuestos que estimaba incontrovertidos y al imponerle honorarios de abogado por temeridad.

Como cuestión de umbral, corresponde a este Tribunal revisar *de novo* la procedencia de la sentencia sumaria. En ese ejercicio, procede examinar si existían controversias genuinas sobre hechos materiales y, en su ausencia, si el TPI aplicó correctamente el derecho. Conforme surgió del expediente, ambas partes coincidieron en que existían hechos incontrovertidos suficientes para dictar sentencia. Por tanto, procede reseñar los hechos materiales que el foro primario tuvo por incontrovertidos conforme a la prueba debidamente presentada y pertinente para la disposición del recurso.

A saber, el foro *a quo* determinó que el señor Irizarry Maldonado, agricultor y titular de varias fincas con siembras de plátano y café, contrató los servicios de la señora Marrero Cruz para asistirle en los trámites relacionados con las solicitudes de ayudas económicas federales de los programas ERP *Phase 2* y PARP. El 31 de mayo de 2023, el apelado firmó una carta de compromiso que dispuso un depósito de $400.00 por cada programa, por lo que en igual fecha pagó $800.00, y el 7% del total recibido por ambos programas. La apelante completó los dos (2) formularios de solicitud, los remitió por correo electrónico a la agencia federal y entregó copia al señor Irizarry Maldonado. Posteriormente, la FSA aprobó las ayudas solicitadas y el apelado recibió los desembolsos correspondientes por las pérdidas sufridas en su finca.

A partir de esos hechos, la señora Marrero Cruz sostuvo que el TPI venía obligado a hacer valer la carta de compromiso bajo el principio de *pacta sunt servanda*. No le asiste la razón. Ciertamente, los contratos válidamente celebrados tienen fuerza de ley entre las partes. Sin embargo, esa fuerza vinculante presupone que la obligación reclamada no contravenga la ley, la moral ni el orden público. Por tanto, el análisis no podía detenerse en la existencia de una firma en una carta de compromiso ni que la apelante realizó gestiones que culminaron en la aprobación de las ayudas solicitadas. La controversia de este caso estribó en determinar si la cláusula que impuso un pago adicional equivalente al 7% del total recibido por el señor Irizarry Maldonado bajo los programas ERP *Phase 2* y PARP constituía una obligación judicialmente exigible.

Esa estructura de pago es precisamente la que torna improcedente la reclamación. La cláusula en controversia fijó, además del pago adelantado, unos honorarios contingentes basados en el monto de las ayudas federales finalmente desembolsadas al señor Irizarry Maldonado. Así, aun cuando la carta de compromiso fue firmada y la apelante realizó gestiones relacionadas con las solicitudes, el pacto pretendía separar una porción de fondos públicos concedidos para el fin específico de compensar las pérdidas agrícolas sufridas por el agricultor.

Es decir, los programas ERP *Phase 2* y PARP no eran fondos disponibles para cualquier uso, ya que ambos forman parte de un esquema federal de asistencia agrícola dirigido a canalizar una ayuda económica directa a los productores afectados por desastres elegibles y por la pandemia del COVID-19. El ERP *Phase 2* estaba dirigido a compensar pérdidas de cultivos, calidad o producción ocasionadas por desastres ocurridos durante los años 2020 y 2021, mientras que PARP procuraba aliviar pérdidas de ingresos sufridas a causa de la pandemia. Reconocer eficacia judicial a una cláusula que calcula una

compensación contingente sobre el monto de tales ayudas tendría el efecto de reducir el beneficio económico que los programas procuraron conferir directamente al agricultor afectado.

Lo anterior no significa que los servicios de gestoría fuesen, por sí solos, improcedentes o no compensables, ni que toda compensación pactada por asistir a un agricultor ante la FSA sea inválida. El punto determinante es la modalidad específica de compensación, ya que la señora Marrero Cruz peticionó una suma adicional contingente, calculada como porcentaje directo de las ayudas federales aprobadas al agricultor. Así formulado, el reclamo dejó de descansar únicamente en el valor de las gestiones realizadas y quedó atado a la cuantía total de un desembolso de fondos federales los cuales fueron el resultado de una cuantificación reglamentaria de pérdidas agrícolas o disminución de ingresos del señor Irizarry Maldonado, no una suma desvinculada de su operación agrícola.

La ejecución de la cláusula de honorarios contingentes del 7% sobre el total desembolsado al agricultor —aproximadamente $17,500.00— tendría el efecto de substraer una cantidad sustancial de las ayudas aprobadas y destinarlas al pago por la tramitación de las solicitudes.

Así, reconocer eficacia a la cláusula reclamada alteraría el destino económico de las ayudas concedidas por la FSA al apelado por las pérdidas sufridas en su operación agrícola. Además, la ausencia de una prohibición específica contra los honorarios contingentes no obliga a reconocer eficacia judicial a una cláusula incompatible con la normativa de los programas, particularmente cuando su ejecución reduciría sustancialmente el beneficio aprobado al agricultor. En ese contexto, el foro apelado actuó correctamente al concluir sumariamente que la cláusula en controversia era insuficiente para sostener una acción de cobro de dinero.

Tampoco resulta persuasivo el planteamiento de que el TPI impuso indebidamente a la apelante la carga de demostrar una disposición legal que autorizara expresamente el pacto. Pues, quien insta una acción de cobro de dinero tiene la carga de demostrar la existencia de una deuda vencida, líquida y exigible. La exigibilidad supone que el cumplimiento de la obligación pueda reclamarse judicialmente. Por tanto, la apelante no podía limitarse a invocar la existencia de una carta firmada ni la prestación de servicios de gestoría; debía demostrar que el pago adicional reclamado constituía una obligación judicialmente exigible bajo el marco legal y reglamentario aplicable, lo cual no surgió del expediente examinado.

Por último, si bien la señora Marrero Cruz no prevaleció en su reclamo y el tracto procesal reflejó dilaciones de su parte durante el descubrimiento de prueba que conllevaron una sanción económica previa por concepto de temeridad, no consideramos que su reclamación, basada en un documento suscrito por el demandado y con validez *prima facie,* era frívola, contumaz o carente de fundamento. Por ende, consideramos que incidió el TPI al concluir que la demandante incurrió en temeridad. Ante este resultado, procede dejar sin efecto la imposición de los $3,000.00 por concepto de honorarios de abogado por el referido concepto.

**IV.**

Por los fundamentos antes expuestos, se modifica la *Sentencia* apelada a los únicos fines de dejar sin efecto la imposición de honorarios de abogado por temeridad. Así modificada, se confirma en todos los demás extremos.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones